UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WEST AMERICAN INSURANCE COMPANY, | CASE NO. C23-5482-KKE |
| Plaintiff(s), | ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| HALLMARK SPECIALTY INSURANCE COMPANY, | |
| Defendant(s). | |

Plaintiff West American Insurance Company ("West American") and Defendant Hallmark Specialty Insurance Company ("Hallmark Specialty") dispute whether Hallmark Specialty was obligated to indemnify and defend West American's insured, Sea Con LLC, in underlying litigation. Coverage for Sea Con under the Hallmark Specialty policy is triggered when an injury is caused, at least in part, by Hallmark Specialty's insured, or someone working on behalf of the insured, and the cause or causes of the injuries at issue in the underlying litigation have not yet been determined. These factual unknowns prevent the Court from finding that either party is entitled to judgment as a matter of law on the claims presented in this lawsuit, and thus the parties' cross-motions for summary judgment must be denied.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 1

## I. BACKGROUND

Daniel Fernandez was employed by John Bull Builders, LLC ("Bull") in March 2016, when he alleges that he "was seriously injured when he fell while working at height and the fall-protection system that was in use was not suitable and did not activate before he hit the ground." Dkt. No. 34 at 35. The general contractor of the jobsite, Seattle Construction Services, Inc. ("Sea Con"), contracted with Mako Steel for certain work on the construction of a multi-building storage facility, and Mako Steel in turn contracted with Bull. *Id.* at 5–28, 30–32.

The contract between Sea Con and Mako Steel contains an indemnification provision:

> [Mako Steel] agrees to defend, indemnify, and hold harmless [Sea Con] from any and all claims, demands, losses, and liabilities to or by third parties arising from, resulting from, or connected with work performed or to be performed under this Subcontract by [Mako Steel], its agents, employees, and lower-tier subcontractors and suppliers of any tier, even though such claims may prove to be false, groundless or fraudulent, to the fullest extent permitted by law and subject to the limitations provided below.

Dkt. No. 34 at 11. The contract also requires Mako Steel to name Sea Con as a "primary additional insured" and attach an endorsement naming Sea Con as "primary additionally insured including products/completed operations not limited to 'ongoing operations'" under the commercial general liability ("CGL") insurance policy that Mako Steel was required to maintain during the term of its contract with Sea Con. *Id.* at 17 (emphasis in original omitted).

At the time of Fernandez's injury, Mako Steel's Hallmark Specialty CGL policy contained two blanket additional insured endorsements, one for ongoing operations and one for completed operations. The "ongoing operations" endorsement defines an "additional insured" as a person or organization listed on a schedule, "but only with respect to liability for 'bodily injury' … caused, in whole or in part, by: (1) [Mako Steel's] acts or omissions; or (2) The acts or omissions of those acting on [Mako Steel's] behalf[.]" Dkt. No. 34 at 338. The "completed operations" endorsement defines an "additional insured" similarly: a person or organization listed on a schedule, "but only

with respect to liability for 'bodily injury' or 'property damage' caused, in whole or in part, by '[Mako Steel's] work[.]'" *Id*. at 336. The Hallmark Specialty policy limits are $1 million per any "occurrence" of bodily injury and $2 million in the aggregate. *Id*. at 307.

The Hallmark Specialty policy provided that its insurance is excess over "[a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement." Dkt. No. 34 at 320. Similarly, Sea Con's West American policy indicates that its insurance is excess over "[a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured." *Id*. at 87–88.

Fernandez filed an action ("Underlying Lawsuit") against Sea Con in Clark County Superior Court in March 2019. Dkt. No. 34 at 34–37. Fernandez's complaint alleges that Sea Con "was the owner, operator, and in control of the construction site where [he] was injured and retained control over the work of its subcontractor [Bull]." *Id*. at 35. Fernandez asserted a claim for negligence, alleging that Sea Con had "negligently breached its non-delegable duty to provide [him] with a safe place to work, and to see to it that the job site was safe and that its subcontractors were in compliance with all applicable safety standards and governmental regulations." *Id.*

West American insured Sea Con from September 1, 2015, through September 1, 2016, and it retained an attorney to protect the interests of Sea Con in the Underlying Lawsuit. Dkt. No. 33 ¶ 3. In May 2019, West American tendered defense and indemnity of the Underlying Lawsuit to Mako Steel on Sea Con's behalf. *Id*. ¶ 4.

On behalf of its named insured Mako Steel, Hallmark Specialty accepted West American's tender in August 2019, agreeing that (per their contract) Mako Steel would "share defense" of Sea

Con with Bull in the Underlying Lawsuit, subject to a full reservation of rights. Dkt. No. 34 at 400–01. Hallmark Specialty noted that it did not, at that time, "have any information to support a liability claim arising out of Mako's ongoing operations" and Sea Con "is only an additional insured for claims arising out of the ongoing operations of Mako[.]" *Id*. at 401. In that letter, Hallmark Specialty also acknowledged, however, that "[it] appears the fall protection system [Bull] had in use was not suitable for the work being conducted[,] causing [Fernandez] to fall to the ground." *Id*. at 400.

In July 2019, Bull's insurer Gemini Insurance Company ("Gemini") agreed to accept Mako Steel's "tender of the defense for Sea Con under a Reservation of Rights with respect to indemnification[,]" noting that it currently had "no information to support the conclusion that [Bull's] operations caused the injuries and damages alleged by [Fernandez]." *Id*. at 395–96.

In a March 2021 letter, Hallmark Specialty reiterated its agreement to provide coverage to Sea Con as an additional insured, but emphasized its position that per the contract between Sea Con and Mako Steel, Sea Con is an additional insured "only regarding the fault attributable to Mako Steel or its lower-tier subcontractors, such as John Bull, but not for any fault attributable to Sea Con." Dkt. No. 34 at 404–05. Hallmark Specialty informed West American that

> because the share of liability that may be due to Sea Con's own fault cannot be known under the allegations of the Complaint, [West American] has an equal duty to defend Sea Con along with Hallmark and the insurer of John Bull. For the same reason, [West American] has a duty to indemnify Sea Con for any liability caused by Sea Con's own acts or omissions should the ultimate facts show Sea Con's acts or omissions caused any portion of Fernandez's injuries.

*Id*. at 405.

The Underlying Lawsuit settled in April 2022, apparently without motions practice and before resolution of the merits of the case (Dkt. No. 44-5), with West American, Gemini, and Hallmark Specialty each contributing one-third of the settlement amount. *See* Dkt. No. 5 ¶ 5.8.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 4

West American requested that Hallmark Specialty fund the settlement payment up to the amount of the Hallmark Specialty policy limit, and Hallmark Specialty refused. Dkt. No. 33 ¶ 6. West American also requested that Hallmark Specialty reimburse West American for the costs and fees it expended in defending Sea Con in the Underlying Lawsuit, and Hallmark Specialty refused. *Id*. ¶ 4.

After Sea Con assigned its rights under the Hallmark Specialty policy to West American, West American filed this lawsuit in May 2023. Dkt. No. 1. The operative complaint alleges that, among other things, Hallmark Specialty breached its duty to defend Sea Con in the Underlying Lawsuit and to fund the settlement payment up to the policy limit, and should be required to reimburse West American for the funds it expended defending Sea Con and the funds it overpaid into the settlement payment because the Hallmark Specialty policy provides primary coverage. Dkt. No. 5.

West American and Hallmark Specialty cross-moved for summary judgment on all claims. Dkt. Nos. 32, 43. The parties have provided supplemental briefing as requested by the Court (Dkt. Nos. 49, 50), and the cross-motions are now ripe for resolution.

## II.   ANALYSIS

### A.   Legal Standards

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 256.

In resolving a motion for summary judgment, the court considers "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine

factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. at 249.

In Washington,[1] courts "construe insurance policies as contracts." *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005). "We consider the policy as a whole, and we give it a 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Id*. (quoting *Weyerhaeuser Co. v. Com. Union Ins. Co.*, 15 P.3d 115, 122 (Wash. 2000)). "Endorsements must be read together with the policy to determine the intent of the parties. An endorsement becomes a part of the insurance contract even if the result is a new and different contract." *Transcontinental Ins. Co. v. Wash. Pub. Utils. Dists. Util. Sys.*, 760 P.2d 337, 343 (Wash. 1988). "The party seeking to establish coverage bears the initial burden of proving coverage under the policy has been triggered." *Pleasant v. Regence BlueShield*, 325 P.3d 237, 243 (Wash. Ct. App. 2014).

**B.     The Cause of Fernandez's Injuries Cannot Be Determined on the Record Before the Court, and Must Be Decided Before the Court Can Determine Whether Sea Con is Entitled to Coverage as an Additional Insured Under the Hallmark Specialty Policy.**

As discussed above, the additional insured endorsements in the Hallmark Specialty policy explain when that coverage is applies: the Hallmark Specialty policy covers Sea Con as an additional insured "only with respect to liability for 'bodily injury' … caused, in whole or in part, by" Mako Steel's acts or omissions, as well as, under the "ongoing operations" endorsement, when the injury is caused by the acts or omissions of those acting on Mako Steel's behalf. Dkt. No. 34 at 336, 338. Under either endorsement, the covered liabilities are limited to injuries caused in

---

[1] The parties' cross-motions for summary judgment agree that Washington law governs the interpretation of the insurance policies at issue here. *See* Dkt. No. 32 at 11–12, Dkt. No. 43 at 7–10.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 6

whole or in part by the acts or omissions of a party or parties other than Sea Con. *Id*. All of West American's claims are based, at least in part, on an allegation that Sea Con is entitled to coverage as an additional insured under the Hallmark Specialty policy and thus Hallmark Specialty was obligated to indemnify and defend Sea Con in the Underlying Lawsuit. *See* Dkt. No. 5 ¶¶ 5.3, 6.2, 7.2, 8.2. West American's complaint also alleges that the Hallmark Specialty policy provides primary coverage to Sea Con, such that it should have funded more of the defense and indemnification than it did. *See id*. ¶¶ 5.4, 5.6, 6.4, 7.4, 8.5.

In its motion for summary judgment, West American reads Fernandez's complaint to imply that his injuries arose as a result of *Bull's* failure "to provide an appropriate fall-protection system for its employees[,]" and it therefore asserts that Hallmark Specialty was required to defend and indemnify Sea Con for its entire liability in the Underlying Lawsuit because Fernandez's injuries were caused "in whole or in part" by "the acts or omissions of those acting on [Mako Steel's] behalf[,]" namely Bull. Dkt. No. 32 at 13–14.

West American cites no evidence in the record to support its position as to the cause of Fernandez's injuries, however. The face of Fernandez's complaint is unavailing because it brings no claims against either Mako Steel or Bull, and does not reference any act or omission on Mako Steel's or Bull's part that caused Fernandez's injuries. *See* Dkt. No. 34 at 34–37. Instead, the complaint is brought against Sea Con for its own negligent failure to maintain a safe workplace. *See id*. Both parties urge the Court to construe "the facts" of the Underlying Lawsuit in their preferred manner and to find, based on either what was alleged or what was not alleged, that either Sea Con did or did not qualify as an additional insured under the Hallmark Specialty policy. *See, e.g.*, Dkt. No. 32 at 16 (West American's motion for summary judgment: "*It appears that* the accident and resulting injuries alleged in the underlying litigation is due to the negligence of Bull …." (emphasis added)); Dkt. No. 43 at 7 (Hallmark Specialty's cross-motion for summary

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 7

judgment: "No trial was held in the Fernandez lawsuit and no motion practice definitively established the facts of the Fernandez lawsuit. So the allegations by Fernandez of Sea Con's sole and independent fault cannot be ignored." (citation omitted)). But the Underlying Lawsuit settled without a resolution of the facts, and the settlement agreement between Fernandez and Sea Con disclaims any admission of liability on the part of Sea Con. *See* Dkt. No. 36 at 3.

Although West American emphasizes (Dkt. No. 46 at 3–4) that a Washington State Department of Labor & Industries investigation apparently sparked by Fernandez's accident led to safety citations issued against Bull, and no citations issued to Sea Con, those citations are evidence that could support a finding that Bull was negligent, but are not a finding of negligence itself. *See, e.g.*, *Gilbert H. Moen Co. v. Island Steel Erectors, Inc.*, 912 P.2d 472, 477 (Wash. 1996) (finding citations as evidence of negligence sufficient to survive a motion for summary judgment, but "not negligence per se"). Moreover, the citations themselves are not in the record, and the Court will not rely on Sea Con's retained expert's summary reference to them (Dkt. No. 34 at 41) to find, in the first instance, that Fernandez's injuries were caused in whole or in part by Bull's acts or omissions.

The Court asked the parties to provide supplemental briefing as to whether the factual uncertainties surrounding the cause of Fernandez's injuries would preclude summary judgment (Dkt. No. 48), and those briefs do not persuade the Court that the unanswered causation question is not material here. For example, West American cites *Allied World National Assurance Company v. Foremost Insurance Company* for the proposition that where there is evidence in the record suggesting that the injury at issue would give rise to coverage under an additional insured endorsement, a court can find coverage under that endorsement even if the underlying lawsuit is settled without resolving liability for the injury. Dkt. No. 49 at 3 (citing No. C20-154 MJP, 2021 WL 322176 (W.D. Wash. Feb. 1, 2021)). But in *Allied*, the parties *agreed* that plaintiff's insured

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 8

was an additional insured covered by defendant's policy with respect to the underlying lawsuit there and there was no dispute about the cause of the injuries at issue. *See* 2023 WL 322176, at *3. The *Allied* decision contains no discussion of facts or arguments that help the Court resolve the question presented here, where the cause of the injuries in the Underlying Lawsuit is uncertain and disputed, and it is the cause of the injuries that determines coverage.

West American also relies on *Equilon Enterprises LLC v. Great American Alliance Insurance Company* to support its argument that a court can find additional insured coverage even when an insurer disputes coverage after a settlement. *See* Dkt. No. 49 at 3–4 (citing 132 P.3d 758 (Wash. Ct. App. 2006)). In *Equilon*, the named insured was a fuel distributor with a contract to deliver Shell fuel to service stations. 132 P.3d at 759. Per the named insured's contract with Shell, the named insured listed Shell as an additional insured with respect to liability arising out of the named insured's operations. *Id*. A young man was later assaulted at one of the service stations selling Shell fuel via the contract with the named insured, and that victim sued multiple defendants, including the service station as well as Shell, arguing that the service station was negligently maintained by its owners and its owners were agents of Shell. *Id*. at 760. Shell settled the agency claim, and the named insured's insurer refused to indemnify or defend Shell in that settlement on the grounds that the additional insured endorsement did not provide coverage. *Id*. According to the insurer, the injuries that led to the underlying lawsuit did not "arise out of" the named insured's operations, and only those liabilities were covered by the additional insured endorsement. *Id*.

The *Equilon* court disagreed with that interpretation, noting that the additional insured endorsement was worded broadly to cover not merely injuries arising from the named insured's operations, but *any* "liability arising out of [the named insured's] operations or premises owned by or rented to [the named insured.]" 132 P.3d at 760–61. The court liberally construed the additional insured endorsement to find that the victim's claims could be considered a liability

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 9

"arising out of" the named insured's operations, because it was the named insured's business with the service station that gave rise to the theory that Shell was liable as an agent of the service station owners. *Id*.

The broad wording of the additional insured endorsement was crucial to *Equilon*'s holding, but that wording finds no analog in the policy language at issue in this case. The Hallmark Specialty policy's additional insured endorsements provide coverage to Sea Con only with respect to injuries caused by the named insured or its agents, rather than applying broadly to all liabilities arising from the named insured's operations. *See* Dkt. No. 34 at 393. The Court thus finds *Equilon* unhelpful here.

It may be possible to establish the factual cause of Fernandez's injuries at trial or via further submissions from the parties (*see* Dkt. No. 49 at 5), but the record does not currently contain evidence that would allow the Court to do so as a matter of law. Nonetheless, extrinsic evidence may suggest that Mako Steel's or Bull's acts or omissions caused Fernandez's injuries, and the record does not explain what, if anything, Hallmark Specialty did to investigate whether a named insured or someone acting on its behalf was implicated in the Underlying Lawsuit. *See* Dkt. No. 34 at 400–41. But on the record before it, the Court cannot determine as a matter of law the obligations of the parties (and/or whether they satisfied them) with respect to additional insured coverage under the Hallmark Specialty policy. *See, e.g.*, *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 726 P.2d 439, 443–44 (Wash. 1986) (explaining that the duty to defend arises when the allegations of a complaint "could, if proven, impose liability upon the insured within the coverage of the policy" but that an insurer must "look beyond the allegations of the complaint if [] the allegations are in conflict with facts known to or readily ascertainable by the insurer").

Accordingly, neither West American nor Hallmark Specialty is entitled to summary judgment on any of the claims in the amended complaint, all of which require resolving whether Sea Con was entitled to coverage as an additional insured under the Hallmark Specialty policy for purposes of the Underlying Lawsuit. The Court's inability to resolve the coverage issue precludes it from determining the derivative disputed issue of whether the West American policy was excess to the insurance provided by the Hallmark Specialty policy. *See* Dkt. No. 32 at 17 (West American's motion for summary judgment, requesting a finding that Hallmark Specialty had the primary duty to defend and indemnify Sea Con).

### III.   CONCLUSION

For the reasons explained above, the Court DENIES the parties' cross-motions for summary judgment. Dkt. Nos. 32, 43.

Dated this 13th day of September, 2024.

Kymberly K. Evanson
United States District Judge