UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WEST AMERICAN INSURANCE COMPANY,<br><br>         Plaintiff(s),<br>    v.<br><br>HALLMARK SPECIALTY INSURANCE COMPANY,<br><br>         Defendant(s). | CASE NO. C23-5482-KKE<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

Plaintiff West American Insurance Company ("West American") and Defendant Hallmark Specialty Insurance Company ("Hallmark Specialty") dispute whether Hallmark Specialty owed West American's insured a duty to defend and indemnify in underlying litigation, and whether Hallmark Specialty's insurance was primary. On previous cross-motions for summary judgment, the Court found an issue of fact precluded a determination as a matter of law as to whether West American or Hallmark Specialty was entitled to summary judgment. Dkt. No. 51. West American subsequently submitted additional evidence and contends that on the record before it, the Court can rule as a matter of law as to the parties' respective obligations. Dkt. Nos. 67–69, 93. Hallmark

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 1

Specialty agrees that the Court can rule as a matter of law, but requests judgment in its favor, rather than West American's. Dkt. No. 95.

Because the record contains undisputed evidence that the injury in the underlying litigation was caused at least in part by Hallmark Specialty's named insured, West American's insured's liability for that injury is covered by the additional insured endorsement to the Hallmark Specialty policy and the insurance provided by that policy is primary. Thus, the Court finds that Hallmark Specialty must reimburse West American for the defense costs and settlement payment it funded, up to the limits of the Hallmark Specialty policy. Accordingly, the Court will grant West American's motion for summary judgment and deny Hallmark Specialty's cross-motion for summary judgment.

## I.     BACKGROUND

Daniel Fernandez was employed by John Bull Builders, LLC ("John Bull") in March 2016, when he alleges that he "was seriously injured when he fell while working at height and the fall-protection system that was in use was not suitable and did not activate before he hit the ground." Dkt. No. 34 at 35. The general contractor of the jobsite, Seattle Construction Services, Inc. ("Sea Con"), contracted with Mako Steel for certain work on the construction of a multi-building storage facility, and Mako Steel in turn contracted with John Bull. *Id*. at 5–28, 30–32.

The contract between Sea Con and Mako Steel contains an indemnification provision:

> [Mako Steel] agrees to defend, indemnify, and hold harmless [Sea Con] from any and all claims, demands, losses, and liabilities to or by third parties arising from, resulting from, or connected with work performed or to be performed under this Subcontract by [Mako Steel], its agents, employees, and lower-tier subcontractors and suppliers of any tier, even though such claims may prove to be false, groundless or fraudulent, to the fullest extent permitted by law and subject to the limitations provided below.

Dkt. No. 34 at 11. The contract also requires Mako Steel to name Sea Con as a "primary additional insured" and attach an endorsement naming Sea Con as "primary additionally insured including

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 2

products/completed operations not limited to 'ongoing operations'" under the commercial general liability ("CGL") insurance policy that Mako Steel was required to maintain during the term of its contract with Sea Con. *Id*. at 17 (emphasis in original omitted).

At the time of Fernandez's injury, Mako Steel's Hallmark Specialty CGL policy contained a blanket additional insured endorsement for ongoing operations. The endorsement defines an "additional insured" as a person or organization listed on a schedule, "but only with respect to liability for 'bodily injury' … caused, in whole or in part, by: (1) [Mako Steel's] acts or omissions; or (2) The acts or omissions of those acting on [Mako Steel's] behalf[.]" Dkt. No. 34 at 338. The Hallmark Specialty policy limits are $1 million per any "occurrence" of bodily injury and $2 million in the aggregate. *Id*. at 307.

The Hallmark Specialty policy went on to provide that

> [i]f required by written contract or written agreement … and provided that the "bodily injury" … first occurs subsequent to the execution of the contract or agreement such insurance [] afforded by this policy shall be primary insurance, and any insurance or self-insurance maintained by the above additional insured(s) shall be excess of the insurance afforded to named insured and shall not contribute to it.

Dkt. No. 34 at 298.

Fernandez filed an action against Sea Con in Clark County Superior Court in March 2019. Dkt. No. 34 at 34–37. Fernandez's complaint alleges that Sea Con "was the owner, operator, and in control of the construction site where [he] was injured and retained control over the work of its subcontractor [John Bull]." *Id*. at 35. Fernandez asserted a claim for negligence, alleging that Sea Con had "negligently breached its non-delegable duty to provide [him] with a safe place to work, and to see to it that the job site was safe and that its subcontractors were in compliance with all applicable safety standards and governmental regulations." *Id.*

West American insured Sea Con from September 1, 2015, through September 1, 2016, and it retained an attorney to protect the interests of Sea Con in the Fernandez action. Dkt. No. 33 ¶ 3.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 3

In May 2019, West American tendered defense and indemnity of Fernandez's claims to Mako Steel on Sea Con's behalf. *Id.* ¶ 4.

On behalf of its named insured Mako Steel, Hallmark Specialty accepted West American's tender in August 2019, agreeing that (per their contract) Mako Steel would "share defense" of Sea Con with John Bull in the Fernandez action, subject to a full reservation of rights. Dkt. No. 34 at 400–01. Hallmark Specialty noted that it did not, at that time, "have any information to support a liability claim arising out of Mako's ongoing operations" and Sea Con "is only an additional insured for claims arising out of the ongoing operations of Mako[.]" *Id.* at 401. Hallmark Specialty also acknowledged, however, that "[it] appears the fall protection system [John Bull] had in use was not suitable for the work being conducted[,] causing [Fernandez] to fall to the ground." *Id.* at 400.

In July 2019, John Bull's insurer Gemini Insurance Company ("Gemini") agreed to accept Mako Steel's "tender of the defense for Sea Con under a Reservation of Rights with respect to indemnification[,]" noting that it currently had "no information to support the conclusion that [John Bull's] operations caused the injuries and damages alleged by [Fernandez]." *Id.* at 395–96.

In a March 2021 letter, Hallmark Specialty reiterated its agreement to provide coverage to Sea Con as an additional insured, but emphasized its position that per the contract between Sea Con and Mako Steel, Sea Con is an additional insured "only regarding the fault attributable to Mako Steel or its lower-tier subcontractors, such as John Bull, but not for any fault attributable to Sea Con." Dkt. No. 34 at 404–05. Hallmark Specialty informed West American that

> because the share of liability that may be due to Sea Con's own fault cannot be known under the allegations of the Complaint, [West American] has an equal duty to defend Sea Con along with Hallmark and the insurer of John Bull. For the same reason, [West American] has a duty to indemnify Sea Con for any liability caused by Sea Con's own acts or omissions should the ultimate facts show Sea Con's acts or omissions caused any portion of Fernandez's injuries.

*Id*. at 405.

The Fernandez action settled in April 2022, without motions practice and before resolution of the merits of the case (Dkt. No. 44-5), with West American, Gemini, and Hallmark Specialty each contributing one-third of the settlement amount. *See* Dkt. No. 5 ¶ 5.8. West American requested that Hallmark Specialty fund the settlement payment up to the amount of the Hallmark Specialty policy limit, and Hallmark Specialty refused. Dkt. No. 33 ¶ 6. West American also requested that Hallmark Specialty reimburse West American for the costs and fees it expended in defending Sea Con in the Fernandez action, and Hallmark Specialty refused. *Id*. ¶ 4.

After Sea Con assigned its rights under the Hallmark Specialty policy to West American, West American filed this lawsuit in May 2023. Dkt. No. 1. The operative complaint alleges that, among other things, Hallmark Specialty breached its duty to defend Sea Con in the Fernandez action and to fund the settlement payment up to the policy limit, and should be required to reimburse West American for the funds it expended defending Sea Con and the funds it overpaid into the settlement payment because the Hallmark Specialty policy provides primary coverage. Dkt. No. 5.

West American and Hallmark Specialty cross-moved for summary judgment on all claims. Dkt. Nos. 32, 43. Those motions were denied (Dkt. No. 51), and the Court granted the parties' request for leave to submit additional evidence and re-file cross-motions for summary judgment. Dkt. No. 62. The renewed cross-motions are now ripe for resolution. Dkt. Nos. 93, 95.

## II.   ANALYSIS

A.   **Legal Standards**

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this

stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 256.

In resolving a motion for summary judgment, the court considers "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. at 249.

In Washington,[1] courts "construe insurance policies as contracts." *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005). "We consider the policy as a whole, and we give it a 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Id.* (quoting *Weyerhaeuser Co. v. Com. Union Ins. Co.*, 15 P.3d 115, 122 (Wash. 2000)). "Endorsements must be read together with the policy to determine the intent of the parties. An endorsement becomes a part of the insurance contract even if the result is a new and different contract." *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists. Util. Sys.*, 760 P.2d 337, 343 (Wash. 1988). "The party seeking to establish coverage bears the initial burden of proving coverage under the policy has been triggered." *Pleasant v. Regence BlueShield*, 325 P.3d 237, 243 (Wash. Ct. App. 2014).

Whether an insurance policy obligates the insurer to defend the insured is generally answered from the "eight corners" of the insurance contract and the underlying complaint, with two exceptions. *Expedia, Inc. v. Steadfast Ins. Co.*, 329 P.3d 59, 64–65 (Wash. 2014).

> First, if coverage is not clear from the face of the complaint but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt on

---

[1] The parties agree that Washington law governs the interpretation of the insurance policies at issue here. *See* Dkt. No. 32 at 11–12, Dkt. No. 43 at 7–10.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 6

the duty to defend.  Second, if the allegations in the complaint conflict with facts known to the insurer or if the allegations are ambiguous, facts outside the complaint may be considered.  However, these extrinsic facts may only be used to trigger the duty to defend; the insurer may not rely on such facts to deny its defense duty.

*Id*. at 65 (citations omitted).  The duty to indemnify is narrower than the duty to defend: "The duty to indemnify exists only if the insurance policy actually covers the insured's liability, whereas the duty to defend arises when the policy could *conceivably* cover allegations in a complaint." *Xia v. ProBuilders Specialty Ins. Co.*, 400 P.3d 1234, 1240 (Wash. 2017).

**B.     Fernandez's Claim Triggers Coverage for Sea Con as an Additional Insured Under the Hallmark Specialty Policy.**

The Court denied the first set of cross-motions for summary judgment because it found that it could not, on the record before it, determine whether the claims in the Fernandez action were covered under the additional insured endorsement due to a lack of evidence as to the cause of Fernandez's injuries.  Dkt. No. 51 at 11.  Specifically, on the record before it at the time, the Court found that it could not determine whether Fernandez's "bodily injury" was "caused, in whole or in part, by" the acts or omissions of an insured (Mako Steel) or those acting on an insured's behalf (John Bull), as required to trigger additional insured coverage for Sea Con under the Hallmark Specialty policy.  *Id*.

Along with West American's renewed second motion for summary judgment, it has submitted evidence that Fernandez's injuries *were* caused at least in part by the acts or omissions of John Bull, and thus were covered by the additional insured endorsement to the Hallmark Specialty policy.  *See, e.g.*, Dkt. No. 67 (Fernandez's declaration stating that John Bull provided him with an inadequate fall arrest system and failed to train him on how to prevent falls); Dkt. No. 68 at 11–12 (Washington's Department of Labor & Industries ("L&I") investigation documents, explaining that John Bull had submitted a fall protection work plan, but was not following its plan

at the time of Fernandez's fall); Dkt. No. 68 at 69–75 (L&I safety citation issued to John Bull at the completion of its investigation).

Hallmark Specialty does not directly dispute that John Bull bears at least some fault for Fernandez's injuries, but it urges the Court to read the insurance contract in a manner where the cause of the injury is not dispositive. Hallmark Specialty emphasizes that as the general contractor on the jobsite, Sea Con has a non-delegable duty to ensure the safety of its jobsites and safety violations of a subcontractor are also chargeable to the general contractor. Dkt. No. 95 at 16–17. It is Hallmark Specialty's position that the claim listed in Fernandez's complaint, which was brought against Sea Con only,[2] is based on Sea Con's direct liability for its own negligence (as opposed to its vicarious liability for the negligence of Mako Steel or John Bull), and that a claim for direct liability does not trigger coverage for Sea Con under the additional insured endorsement. Dkt. No. 98 at 11.

This argument is not grounded in the text of the additional insured endorsement, which does not differentiate between direct liability and vicarious liability. Instead, it differentiates between injuries caused in whole or in part by Mako Steel or one of its subcontractors, and injuries caused solely by an additional insured (Sea Con). Specifically, additional insured coverage applies "with respect to liability for 'bodily injury' … caused, in whole or in part, by: (1) [Mako Steel's] acts or omissions; or (2) The acts or omissions of those acting on [Mako Steel's] behalf[.]" Dkt. No. 34 at 338. Thus, it is *a claim for liability for a bodily injury that is caused at least in part by John Bull* that qualifies Sea Con as an additional insured under the Hallmark Specialty policy.

---

[2] Under Washington's Industrial Insurance Act, an employer is immune from suits seeking damages for workplace injuries. *See Gilbert H. Moen Co. v. Island Steel Erectors, Inc.*, 912 P.2d 472, 476 (Wash. 1996) ("The Industrial Insurance Act grants immunity to employers from suits by employees for workplace injuries in exchange for 'sure and certain relief' for employees suffering job-related injuries." (quoting *Brown v. Prime Const. Co., Inc.*, 684 P.2d 73, 75 (Wash. 1984))).

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 8

Here, Hallmark Specialty presents no evidence suggesting that Fernandez's injuries were not at least in part caused by John Bull's acts or omissions, and West American has submitted ample evidence to support that conclusion. Whether Fernandez's theory of liability against Sea Con was for direct or vicarious liability is immaterial because the additional insured endorsement does not differentiate between theories of liability. Other courts construing similar language have reached the same conclusion. *See, e.g., Navigators Specialty Ins. Co. v. Citizens Ins. Co. of Am.*, 739 F. Supp. 3d 259, 267–69 (D.N.J. July 3, 2024) (citing cases from districts across the country to support the conclusion that an additional insured endorsement that "extends coverage 'to liability for "bodily injury", ... caused, in whole or in part by [the named insured's] acts or omissions, or the acts or omissions of those acting on [the named insured's] behalf" "does not purport to limit coverage to an 'injury' that is 'caused' in one particular way or another, direct or vicarious" and would therefore cover either type of liability); *Pro Con, Inc. v. Interstate Fire & Cas. Co.*, 794 F. Supp. 2d 242, 256–57 (D. Maine June 30, 2011) (finding that because the insurer "includ[ed] the language 'in whole or in part' in its [additional insured endorsement], [it] specifically intended coverage for additional insureds to extend to occurrences attributable in part to acts or omissions by both the named insured *and* the additional insured").

Hallmark Specialty contends that its policy "does not extend coverage to *all* liability that additional insureds may incur, regardless of fault[,]" arguing that "West American seeks to have the court extend coverage to that which was not caused in whole or in part by Hallmark's insured or someone acting on their behalf." Dkt. No. 98 at 5. West American is not seeking this result. Instead, West American emphasizes that there is unrebutted evidence in the record that Fernandez's injuries *were* caused in whole or in part by Hallmark's insured or someone acting on their behalf (John Bull), and that the wording of the additional insured endorsement provides coverage for liability for such injuries. Although Hallmark Specialty would prefer to focus on the

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 9

fact that Fernandez's complaint was brought solely against Sea Con, this fact is not dispositive given the unrebutted evidence in the record (of which Hallmark Specialty was aware, at the time it declined to fully defend or indemnify Sea Con) that Fernandez's injuries were caused in whole or in part by the acts or omissions of John Bull. *See, e.g.*, Dkt. No. 34 at 400 (Hallmark Specialty's claims adjuster's statement in August 2019 that "[i]t appears that the fall protection system John Bull Builders had in use was not suitable for the work being conducted causing [Fernandez] to fall to the ground").

Similarly immaterial to the application of the additional insured endorsement is Section 4.24.115 of the Revised Code of Washington, which voids any provision in a construction contract requiring a subcontractor to indemnify a general contractor for the general contractor's sole negligence in causing the accident. *See* WASH. REV. CODE § 4.24.115. Hallmark Specialty argues that this statute is relevant here because it interprets Fernandez's complaint to bring a claim for Sea Con's sole negligence, and it argues that Mako Steel cannot be required (under the statute) to indemnify Sea Con for such a claim: "[I]f neither Mako Steel nor John Bull contributed to the injury at all, then Sea Con's fault was the only fault at issue and [Sea] Con could have entered into a covenant judgment with Fernandez where West American would have been responsible for damages far in excess of its policy limits." Dkt. No. 98 at 8.

But the Court need not explore this alternate line of reasoning, given that there is unrebutted evidence that John Bull's acts or omissions *did* contribute to the injury and Hallmark Specialty acknowledged this evidence at the time that it declined to fully defend or indemnify Sea Con. The Court may therefore look beyond the facts alleged in Fernandez's complaint to that unrebutted evidence, in determining the scope of Hallmark Specialty's duty to defend and indemnify. *See Expedia*, 329 P.3d at 65. Based on that evidence, the Court finds that Sea Con is an additional

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 10

insured under the Hallmark Specialty policy, and Hallmark Specialty was therefore obligated to defend and indemnify Sea Con in the Fernandez litigation.

**C.      Sea Con's Hallmark Specialty Insurance Is Primary.**

The Hallmark Specialty policy provides that its additional insured coverage is primary if that is required by a contract between Sea Con and Mako Steel, and their contract does require this. *See* Dkt. No. 34 at 11, 17, 298. Sea Con's West American policy also explains that its coverage is excess over any other insurance available to Sea Con as an additional insured. *See* Dkt. No. 34 at 87–88. By operation of both the Hallmark Specialty and West American policies, the insurance available to Sea Con under the Hallmark Specialty policy is primary. Accordingly, Sea Con was entitled to a full defense and indemnification as an additional insured from Hallmark Specialty up to the limits of that policy, which it did not receive.

Hallmark Specialty notes that Sea Con received a complete defense, due to the contribution from West American, which West American had an independent obligation to provide. Dkt. No. 98 at 9. Whether Sea Con was fully defended and indemnified is not in dispute; West American indeed defended and indemnified Sea Con and now seeks reimbursement for the amounts it overpaid from Hallmark Specialty. The parties' dispute centers on whether Hallmark Specialty's insurance was primary and, as explained in the previous paragraph, both the Hallmark Specialty policy and the West American policy provide that the Hallmark Specialty insurance is primary because Sea Con is an additional insured under that policy. Although Hallmark Specialty notes that West American could have brought this dispute to the Court before defending and indemnifying Sea Con (Dkt. No. 98 at 9–10), it has cited no authority precluding West American from bringing its action now.

Accordingly, because the Hallmark Specialty policy provided insurance to Sea Con that was primary to the insurance available to Sea Con under the West American policy, Hallmark

Specialty had a duty to fully defend Sea Con in the Fernandez lawsuit and a duty to fund Sea Con's portion of the settlement, up to the policy limit of the Hallmark Specialty policy.

**D.    West American Is Entitled to Reimbursement from Hallmark Specialty for the Amount Expended in Defense and Indemnification of Sea Con.**

West American contends that Hallmark Specialty should be required to reimburse it for the defense costs and settlement contribution that it expended with respect to Sea Con, because Hallmark Specialty was contractually obligated to expend those funds. *See* Dkt. No. 5 at 9–11. West American characterizes its request as one for equitable subrogation. Dkt. No. 97 at 12–13. "Subrogation is an equitable doctrine the essential purpose of which is to provide for a proper allocation of payment responsibility." *Trinity Universal Ins. Co. of Kansas v. Ohio Cas. Ins. Co.*, 312 P.3d 976, 984 (Wash. 2013).

Hallmark Specialty argues that West American has no right to subrogation from Hallmark Specialty here because Hallmark Specialty did not owe Sea Con anything. Dkt. No. 98 at 11–12. But, as explained herein, the Court finds that Hallmark Specialty did owe Sea Con a full defense in the Fernandez action, and did have a duty to indemnify Sea Con in funding the settlement of that action. Thus, the Court agrees with West American that it is entitled to be compensated for the payments it made on behalf of Sea Con that Hallmark Specialty was obligated to make under its policy.

### III.    CONCLUSION

For these reasons, the Court finds that West American is entitled to judgment as a matter of law because Hallmark Specialty owed a duty to defend and indemnify Sea Con in the Fernandez litigation, and Hallmark Specialty's insurance is primary to West American's. Thus, West American is equitably subrogated to Sea Con's claims and entitled to reimbursement for the payments that Hallmark Specialty should have made. The Court therefore GRANTS West

American's second motion for summary judgment (Dkt. No. 93) and DENIES Hallmark Specialty's second cross-motion for summary judgment (Dkt. No. 95).

Hallmark Specialty is ORDERED to pay West American the sum of $30,400.17 in reimbursement of defense costs West American incurred in connection with the Fernandez claims, and the sum of $250,000, representing the amount West American was required to overpay in the settlement of the Fernandez claims.

Dated this 8th day of May, 2025.

Kymberly K. Evanson
United States District Judge